136

Argued January 6, reversed February 17, petition for rehearing denied April 1, 1965

PERKINS *v.* THE NATIONAL HOSPITAL ASSOCIATION

398 P. 2d 164

*Curtis W. Cutsforth,* Portland, argued the cause for appellant. On the briefs were Richard C. Helgeson and King, Miller, Anderson, Nash & Yerke, Portland.

*W. E. Tassock,* Portland, argued the cause for respondent. With him on the brief were Barzee, Leedy & Tassock, Portland.

Before McAllister, Chief Justice, and Sloan, Goodwin, and Holman, Justices.

## GOODWIN, J.

This is an action to recover benefits under a medical insurance policy. Trial was had before the court without a jury and judgment was entered for the plaintiff. The insurance company appeals.

The only issue in the case is whether or not the company agreed to be liable for the costs of the surgical treatment employed in this case.

An insured child of the plaintiff was found to be suffering from scoliosis. Scoliosis is a lateral curvature of the spine. Surgery substantially corrected the condition. The cause of the scoliosis in this case was not known.

The policy includes the following language:

"The benefits of this contract do not apply to:
* * * Congenital conditions, deformities, pulmonary tuberculosis after diagnosis, prophylactic or cosmetic surgery."

The company resisted the claim on the ground that scoliosis is a deformity. The trial court agreed that scoliosis is a deformity, but held that under the circumstances of the instant case it was something more, "a progressive and disabling ailment." This, said the trial court, took the case out of the exclusionary clause of the contract.

The trial court concluded that because there are numerous injuries and diseases that result in, or create deformities, e.g., burns, arthritic changes, neoplasms and the like, the quoted exclusionary clause could not have been intended by the parties to preclude payment

for treatment in every case in which a deformity was incidentally treated. The court then held that, since there can be incidental deformities for which treatment might be compensable under the policy, it was necessary only to decide whether the deformity in the case at bar was of the type that should fall within the exclusion. The difficulty, as is not unusual in such cases, lies in deciding upon which side of the line this deformity must fall.

The exclusionary clause names four categories of medical problems for which this insurer chose not to write insurance: pulmonary tuberculosis; congenital conditions; deformities; and surgery which is undertaken [solely] for prophylactic or cosmetic purposes. It will be observed that tuberculosis is specific. Congenital conditions can be ascertained and thus made specific. Deformities, however, are nonspecific. Deformities may be congenital or caused by disease or by trauma. Deformities may be stationary or they may present acute symptoms. The prophylactic-or-cosmetic-surgery defense is not involved in this appeal.

The trial court, in reading the above-described mixture of specific and nonspecific exclusions, decided that while the word "deformities" may not be ambiguous as ambiguity is ordinarily understood, the word is at least vague and uncertain. The court concluded that such vagueness should be construed against the insurer who had chosen the wording. The court held that when a deformity has active and progressive characteristics as distinguished from permanent or stationary characteristics, treatment should be paid for under the policy, provided the treatment is primarily directed toward relief from the progressive or injurious condition and only secondarily, or inci-

dentally, directed toward the elimination of the deformity itself.

The difficulty with the interpretation put upon the deformity exclusion in the trial court is that the record shows that the focus of the surgery was the deformity itself, and that while the possibility of future difficulty provided sound medical indications for the surgical repair, the elimination of the deformity was the immediate goal.

A doctor testified that, if untreated, scoliosis could result in additional and crippling disorders, including the possibility of injury to internal organs. However, the same testimony could apply equally to congenital conditions and to tuberculosis, both of which are specifically outside the risks insured against. Untreated tuberculosis, for example, may well result in the early death of the patient, but that does not make this insurer liable to pay for the treatment. Necessity of treatment, accordingly, does not appear to be relevant in construing the language of the exclusions.

Counsel have been unable to locate a decision which sheds light on the problem before us. If we turn to a medical dictionary, we find deformation and deformity defined as a "[d]istortion of some part of the body. Irregularity of shape or features. anterior d. A name for lordosis, which is a curvature of the spine with a forward convexity * * *." Maloy, Medical Dictionary for Lawyers 170 (2d ed 1951).

■■ Thus it would appear that while the unqualified term "deformities" may be somewhat vague, the term was intended by the insurance company to exclude liability for the costs of repairing a deformity, at least when the repair of the deformity was the principal objective of the treatment. We leave open the question whether the incidental repair of a deformity caused

by a specific injury or treatable disease could be covered as part of the cost of treatment of the principal ailment. Assuming that the trial court was correct in interpreting the contract to cover such treatment, we believe that the case before us does not present that situation. Here the surgery was specifically undertaken to straighten a crooked spine, a condition which is almost a classic example of a deformity as that term is ordinarily used. Accordingly, the treatment was for a condition for which the insurance company had declined to assume financial responsibility.

Reversed.